(105 So. 228)

Nos. 26769–26771.

STATE ex rel. CHARLES et al. v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.

(June 22, 1925.)

*(Syllabus by Editorial Staff.)*

1. Trial ⟪107—Right to be assisted by counsel not one of natural rights of man, but a creature of positive law.

Right to be assisted by counsel not one of natural rights of man, but a creature of positive law.

2. Trial ⟪107—Right to assistance of counsel exists only to extent expressly granted by law.

Right of a person to be heard and the right to be assisted by counsel are distinct and separate rights, and latter right exists only to the extent that it is expressly granted by law.

3. Municipal corporations ⟪218(8)—Statute held not to grant employee right to assistance of counsel at hearing of charges.

Act No. 15 of 1915 (Ex. Sess.) § 5, providing that all persons appointed or employed in warehouses under the administration of the board of commissioners of the port of New Orleans shall only be removed on charges preferred against them to the board of commissioners, and which shall be proven contradictorily against employee to the satisfaction of the board, did not grant to plaintiff employee the right to be assisted by counsel at hearing of such charges.

4. Municipal corporations ⟪218(8) — Court without authority to compel board to reduce to writing proceedings at trial of employee.

Act No. 15 of 1915 (Ex. Sess.) § 5, does not provide for a reduction to writing of proceedings and statements made at trial of employee on charges of incompetence before it, and hence court is without authority to compel board of commissioners to reduce such proceedings to writing; it being sufficient if trial of employee be publicly held, thus affording employee opportunity to reduce proceedings and statements to writing.

5. Municipal corporations ⟪218(8)—Court without authority to compel board to administer oaths or summon witnesses.

Inasmuch as Act No. 15 of 1915 (Ex. Sess.) § 5, does not authorize board of commissioners to administer oaths or summon witnesses in hearings before it on charges preferred against employee, courts are without authority to compel board to do so.

6. Constitutional law ⟪70(1)—Court cannot prescribe time at which board shall transact business.

Courts have no authority to prescribe the hour or day on which public boards shall transact their business.

7. Municipal corporations ⟪218(8)—Suspended employees not entitled to free access to property for purposes of interviewing employees.

Court has no power to take control of property and port facilities intrusted to the board of commissioners of the port of New Orleans or to direct board of commissioners to permit suspended employees notified of trial on charges to have free access to warehouse for the purpose of interviewing board's employees.

**8. Municipal corporations**   ⊗═220(6)—**Employee's demand for salary during suspension held premature.**

While Act No. 15 of 1915 (Ex. Sess.), § 5, makes no provision for suspension of an employee pending trial, a suspended employee can not complain of such suspension, in view of fact that, if charges are refuted, employee will receive full compensation for period of suspension, but, if charges are substantiated, employee's claim will be without merit, since law does not contemplate keeping of an incompetent, dishonest or negligent employee, and hence demand for salary during suspension is premature.

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Porter Parker, and Wm. H. Byrnes, Jr., Judges.

Application for writ of mandamus by the State, on the relation of Samuel Charles and others, directed to the Board of Commissioners of the Port of New Orleans, to compel the performance of certain acts in connection with a hearing under the statute of charges preferred against defendant's employees. From a judgment sustaining defendant's exception to the petition, plaintiffs appeal. Affirmed.

Joseph Harris Brewer, of New Orleans, for appellants.

Harold A. Moise and Arthur B. Hammond, both of New Orleans, for appellee.

ST. PAUL, J. The defendant is a public corporation established under Act 70 of 1896 and the several acts amendatory thereof.

The plaintiffs were (are) warehouse clerks in the service of said board; having been so employed after an "examination" by the "board of *examiners*" provided for by Act 15 of the Extra Session of 1915.

Section 5 of said act provides:

"All persons appointed or employed in said warehouses and other structures [under the administration of said board of *commissioners*] as a result of said examination * * * shall hold their offices or employment during their good behavior, and shall only be removed on charges preferred against them to said board of commissioners, and which shall be proven contradictorily against them to the satisfaction of said board."

I.

Some time prior to July 13, 1923, certain bales of cotton were stolen from the warehouse where plaintiffs were employed; and on said day plaintiffs were indicted by the grand jury in connection with said theft.

Seven days later (July 20, 1923) plaintiffs were notified by defendant's superintendent as follows:

"As a result of your indictment by the grand jury on Friday July 13th, you will please be advised that you were suspended, effective Saturday July 14th. Since you are a civil service employee, you are entitled to trial by the board of commissioners of the port of New Orleans. Due notice will be furnished you when to appear for trial."

II.

On March 13, 1924, plaintiffs were acquitted of the offense preferred against them in said indictment of July 13, 1923.

On May 28th defendant's general manager preferred charges against plaintiffs before defendant board, charging them with "gross inefficiency, incompetency, and neglect of *duty*" in connection with the theft of said cotton. And on the same day plaintiffs were advised that a hearing on these charges would be had before the board of commissioners on June 12th, at 8 o'clock p. m., and were directed to appear at said hearing and present such evidence in their own behalf as they might care to offer.

On June 9th plaintiffs, through their counsel, requested defendants (1) to summon sundry witnesses; and (2) to make arrangement for reporting the evidence stenographically.

On June 18th defendant's secretary wrote plaintiffs *directly* as follows:

"The board of commissioners of the port of New Orleans have directed me to inform you that at the investigation into the written charges preferred against you, * * * the board will, if you so desire, receive written re-

ply from you regarding such charges. The board will also hear any oral statements you care to make, or any oral statements which you desire made by others having knowledge concerning the charges.

"This investigation will be held publicly. Counsel will not be heard. A written record will not be made by this Board of oral statements. You will be expected to arrange to secure the presence of parties whom you desire to have make oral statements, and to present, or cause to be presented, any written statements which you desire to have considered.

"The trial will be held on June 19, 1924, at 8 o'clock p. m. * * *"

From which it appears that, in substance, defendant refused: (1) To allow plaintiffs the assistance of counsel before it; (2) to issue summons for witnesses; and (3) to make any provision for reporting the oral statements made before it. On the other hand, defendant agreed: (1) To hear plaintiffs in person, or in writing; (2) to hear the statements, oral or written, of such persons as plaintiff might wish to have heard; and (3) to hold the trial publicly. All of which appears from the petition and exhibits therewith filed.

### III.

Thereupon plaintiffs at once applied to the lower court for a mandamus, directing said board: (1) To allow plaintiffs to be assisted by counsel before it; (2) to make provision for a complete written record of all the proceedings had and oral statements made before it; (3) to summon as witnesses for plaintiffs such persons in its employ as plaintiffs may require; and also (4) to rescind its action fixing the trial for the hour of 8 o'clock p. m. and fix same for some hour between 9 a. m. and 6 p. m.; (5) to permit plaintiffs free access to its warehouses for the purpose of interviewing its employees; and (6) to pay plaintiffs their salaries in full from the date of suspension until reinstated.

To which petition for mandamus the de-fendant excepted that it showed no cause of action; which exception was sustained below.

### IV.

It will thus be seen that, (1) although plaintiffs were refused the right to appear before defendant *through counsel*, they were none the less freely accorded the right to appear *in person*; which meant (in effect) that the trial would be conducted "contradictorily" with plaintiffs, as required by the statute, but would not be conducted with the formality of a trial before a court, nor surrounded with the technicalities and refinements incident to such trials, *which the statute does not require*; and (2) that, although the defendant would itself make no provision for reporting the proceedings had before it, nevertheless the trial would be *publicly* held, which (in effect) permitted plaintiffs to take and keep a full report of such proceedings.

### V.

[1] In our opinion the defendant was perfectly justified in its course. The right to be assisted by counsel is not one of the *natural rights of man;* but, on the contrary, is altogether a creature of positive law. Nothing in State ex rel. McMahon v. New Orleans, 107 La. 632, 32 So. 22, says anything to the contrary. All that was decided in that case was that the sham trial of McMahon before the city council was only a farcial pretext for a trial (growing out of great excitement); and as one of the *incidents* of this pseudo trial mention was made of the fact that he was denied counsel, whilst his prosecutors (who were also his *judges*) were actively assisted by not only one but even *two* able attorneys. But such mention was made *principally* for the purpose of showing that McMahon had not waived any right by attempting to defend himself after his objections to going to trial had been overridden. Thus:

"When, therefore, he had offered them [his objections] and they were overruled, and the council ordered that the trial should proceed, he found himself without advice or witnesses and, practically, helpless; and, in view of his application for relief [previously, and prematurely, made to the district court, and to this court] we do not think he should be held to have waived his rights."

We do not think this case is authority for the proposition that one is always entitled to the assistance of counsel in all cases when he is entitled by law to be *heard*, even though such right be not expressly granted. And that is precisely what plaintiffs here contend.

[2] On the contrary, we think the right to be heard is one thing, and the right to be assisted by counsel is quite another thing. And this last (like the right to be confronted by witnesses) exists only to the extent that it is expressly granted by law. Cf. Const. U. S. Amend. 6, in fine. See, also, Merchants' Stock & Grain Co. v. Board of Trade, 201 F. 20, 120 C. C. A. 582.

[3] In the case before us this right is not granted. The statute provides merely that the charges "shall be proved contradictorily with (the one charged) to the satisfaction of said board (of port commissioners)."

### VI.

[4] In the same way, the statute does not provide that the proceedings and oral statements made at such trials shall be reduced to writing; and hence we are without authority to command defendants to cause them to be so reduced. Moreover, as we have said, the fact that the trial would be publicly held afforded plaintiffs full opportunity to have said proceedings and oral statements reduced to writing.

On the other hand, if, when the trial takes place, it should occur that counsel for the board should appear not merely to advise said board *fairly* as to its rights *and duties* in connection with the trial and the method of conducting same, but should also (as plaintiffs fear) take an active part in the prosecution of the charges against them, it will then be time enough for plaintiffs to lay before the courts the methods pursued at said trial to the end that they may then determine whether said trial was a trial *in fact* or a mere *pretext* for a trial.

### VII.

[5] Nothing in the statutes relating to the defendant board authorizes it to administer oaths or to summon witnesses. Hence the courts are without authority to compel it to do so. Oaths so administered would be vain, and process so issued would be void. But none the less it would have been more *gracious* for the board to have requested, or *invited*, the witnesses named by plaintiffs to appear before it.

### VIII.

[6] Of course the courts have no authority to prescribe *the hour*, or even the day, on which public boards shall transact their business. This must be prescribed either by law or by such board themselves. The district judge has well said:

"I know of no constitutional provision, or law of this state, which authorizes the Courts to legislate on this subject, or to do what I am asked in this petition, viz., to prescribe a lot of rules and regulations for this board under which it must hold this investigation."

### IX.

[7] And, again of course, no court has authority to take control, even in part, of the property and port facilities intrusted by law to this board, and to direct the board to permit these plaintiffs free access to its warehouses for the purpose of interviewing such of its employees as they may desire. If plaintiffs desire to interview defendant's employees, they are certainly at liberty to do so; but they are not entitled to free access to defendant's premises for that purpose.

## X.

[8] The law has made no express provision for the *suspension* of defendant's employees pending their trial. But it is manifest that a suspended employee has no just cause for complaint. He is indeed entitled to a speedy trial if he demands it, and the courts will see that he gets it without unreasonable delay. If, on trial, he is found guilty of the charge and duly removed, that ends the matter, since nothing in the law contemplates, that the board should keep *and pay* an incompetent, or negligent, or dishonest employee; and thus his final discharge after trial relates back to the time when he earned such discharge by his own improper conduct. And if, on trial, it is shown that he has not merited discharge, then his suspension is a mere enforced vacation for which the board must pay him as if he had never been suspended. Hence plaintiffs' demand for salary during suspension is wholly premature at this time. If, in due course, they be reinstated by the board or by the courts, they will recover their salaries in full for the time of their suspension. And, if they are not finally re-instated, their claim will be without justification.

### Decree.

The judgment appealed from is therefore affirmed.