LE BLANC, Justice.
This suit which is brought under the Declaratory Judgments Act of Louisiana —LSA-R.S. 13:4231, arose out of the following state of facts: ,
On January 10, 1947, William C. Jackson, an employee of the Police Department of the City of New Orleans, was charged by a bill of information filed in the Criminal District Court for the Parish of Orleans with the crime of public bribery. On January 15, 1947, the Superintendent of Police notified Jackson’s commanding officer by bulletin that he (Jackson) was suspended from duty, effective at once, pending charges by the assistant Superintendent. On January 18, 1947, departmental charges were filed with the Superintendent of Police charging Jackson with (1) conduct unbecoming an officer and (2) neglect of duty, and on January 20, 1947, notice of these charges was served on him in person by his commanding officer. This notice contained the notation: “You will be notified later of the date of the trial”.
On March 17, 1947, William W. Shaw, Director of Personnel, Department of City Civil Service, City of New Orleans, wrote a letter addressed to William C. Jackson at his home address, informing him that the City Civil Service Department had been notified by the Police Department of his second suspension, effective March 15, 1947 and informing him further that under Section 34 of the City Civil Service Law, LSA-R.S. 33:2424, he might, within sixty days from the date of a second suspension aggregating more than sixty days in any continuous period of twelve months, appeal to the City Civil Service Commission for a hearing if he deemed that the suspension had been unwarranted.
The charge of bribery remained pending in the Criminal District Court, apparently without any action being taken, until March of 1947. Over a period of several months. thereafter certain motions and pleas were heard and subsequently Jackson was tried, but the jury failed to agree and a mistrial was ordered. Finally, after a second trial he was found “not guilty” by a jury, on June 12, 1950.
Immediately following his acquittal, Jackson went to the office of the Superintendent of Police and asked that his suspension be lifted and that he be restored to duty. His request was taken under consideration and eventually he learned through some other source that he had been dropped from the force.
On September 11, 1950, through his attorney, he requested a hearing before the City Civil Service Commission. The request was granted, a hearing was conducted in due form and on December 18, 1950 the Commission rendered an order *776 in which it stated that it felt “bound to reinstate William C. Jackson to the position of Sergeant in the Police Department of the City of New Orleans with full pay for all time lost to date.” Jackson was put back to work on the following day but the City followed this action by filing the present suit in which it contends that it is not willing to pay him his salary .for a period of almost four years during which time he performed no services and during which also he was in a position, had he so desired, to apply for reinstatement. The prayer of its petition is for a declaratory judgment decreeing that Jackson has no claim whatever for such back salary.
■ In his answer to the petition, Jackson averred that from the time of the personal service of the notice of departmental charges against him on January 20, 1947, he. has not received any notification whatsoever, either of the date of his trial before the Superintendent of Police or of his alleged second suspension. Assuming then the position of a plaintiff in reconyention, he alleged that the City of New Orleans was indebted unto him in the sum of $10,217.50 for salary for lost time as he had been held entitled to by the City Civil Service Commission and he prayed for judgment accordingly.
■ The City then filed a supplemental and amended petition in which it specifically alleged and pleaded a prescription of sixty days • and. laches on the part of defendant in asserting; his demand. It further alleged-that there .was no duty on the part of the City Civil Service Commission to give the defendant- notice of his second suspension, or the renewal of the suspension, in view of the fact that he must have known that he was suspended. Nevertheless, it averred that he was notified of both his first and second suspensions and that by his failure to appeal to the City Civil Service Commission within sixty days from notice of his second suspension, the Commission was 'divested of jurisdiction to hear his appeal or to reinstate him or order that he be paid any amount of back salary.
After trial in the Court below there was judgment in favor of the City and against Jackson declaring that he had no- claim against the City for back pay. The trial judge was of the opinion that the defend-' ant should be held to the knowledge of what was contained in the public records of the Civil Service Commission and those of the Office of Superintendent of Police from which he could have learned of his second suspension. He also applied the doctrine of laches to the case and held that defendant was not entitled to be paid for the period of time during which he was under suspension and performed no services for the City.
Upon his claim in reconvention having been dismissed by the judgment of the district court, defendant took this appeal.
. The provisions of law relating to' Civil Service for Cities of over 100,000 population are found in LSA-R.S. Title 33, be *778 ginning at Section 2391. Section 2423 bears the heading “Corrective or disciplinary action for maintaining standards of sendee”, and it begins with this language :
“When any employee in the classified service is unable or unwilling to perform the duties of his position in a satisfactory manner or has committed any act to the prejudice of the service, or has omitted to perform any act that it was his duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service.”
The section then points out six measures of correction or discipline to which such action may extend. The measure with which we are concerned in this case is the one listed under number 5 and which provides for “suspension without pay for a period not exceeding in the aggregate sixty days in any continuous period of twelve months”.
The section then goes on to provide that “In every case of removal or reduction in pay of any employee in a competitive position in the classified service or of involuntary retirement or demotion of the employee, the appointing authority shall furnish the employee and the director a statement in writing of the reasons therefor. The director shall notify the employee in writing at his last known address that he has a right to make a reply in writing, shall receive and consider the reply, and may make an investigation of the facts. * * * ”
Section 2424 is the one which governs appeals to the Commission. It provides that:
“Any regular employee in the classified service, subject to the provisions of this Part, or the rules made pursuant thereto, who deems that he has been removed, dismissed, retired, reduced in pay, demoted, subjected to a second suspension of sixty days or less without pay, or subjected to any other disciplinary action set out in R.S. 33:2423, without just cause, may, within sixty days of the action demand a hearing to determine the reasonableness of the action, and the commission shall grant the employee a hearing within forty-five days after receipt of the request. * * * ”
The measures enumerated in Section 2423, as indicated by the heading to the section, are intended to be used as corrective and’ disciplinary action only. This is made clear especially with regard to suspension-of the employee as he cannot be suspended without pay, for a longer period than the aggregate of sixty days in any continuous period of twelve months. The suspension in this case seems to have gone beyond merely corrective or disciplinary action since it was for an indefinite period. and a trial was evidently contemplated accord *780 ing to the notation written on the notice which was served on him and by which he was suspended. We are led to believe that the charges preferred against the employee and his suspension arose out of the information which had been filed against him in the Criminal District Court in which Ke was charged with the criminal offense of public bribery.
Probably therefore, the Police Department was right in charging the defendant with conduct unbecoming an officer and neglect of duty and in suspending him from the force pending a trial of these charges. But, strangely enough, the Civil Service Law, LSA-R.S. 33:2391 et seq. apparently makes no provisions for action of this kind and does not prescribe any form of recourse to the Civil Service Commission in such cases. It would seem therefore that in cases of this kind the employee who is charged with conduct unbecoming an officer, growing out of criminal charges which have been preferred against him, is powerless to act and can only await the final disposition of the criminal charges before taking any action he may deem warranted before the Civil Service Commission.
It is to be noted however that on March 17, 1947, sixty days after the departmental notice of suspension had been given, a letter, written by the Director of Personnel of the Department of Civil Service was addressed to the defendant. The letter reads as follows:
“The City Civil Service Department has been notified by the Police Department of your second suspension, effective March 15, 1947. Under Section 34 of the City Civil Service Law [LSA-R.S. 33:2424], within 60 days from the date of a second suspension aggregating more than 60 days in any continuous period of twelve months, you may appeal to the City Civil Service Commission for a hearing if you deem your suspension has been unwarranted.” (Our emphasis.)
This letter was evidently intended to be a compliance with the provisions of LSA-R.S. 33:2424 which relates to appeals by employees to the Commission and would indicate that the Police Department was then attempting to make use of the action provided for in Section 2423 which, as already pointed out is merely corrective or disciplinary. It is difficult to understand how, in the face of the first notice of suspension which was served on the defendant on January 18, 1947, and which was for an indefinite period, he could be suspended a second time aggregating more than 60 days, on March 15, 1947. That cannot be the form of suspension which the statute contemplated when, in regulating the matter of appeals to the Commission, it referred to the employee having had to be subjected to a second suspension of sixty days or less, without pay, before he could present his appeal.
*782 But let us assume, merely for the sake of argument, that the Police Department- and the Civil Service Commission were within their right, under the statute, in subjecting the defendant to a second suspension and that the statute provides a prescriptive period of sixty days in which the defendant might have appealed to the Civil Service Commission, surely the law contemplated a notice of some kind on which to establish the beginning of the. sixty day period. The Police Department and the Civil Service Commission themselves must have concluded that notice was required since a letter containing one was written and addressed to the defendant. However, proof of the notice having been mailed, and of its delivery, is totally lacking and the defendant positively denies that he ever received the letter referred to or any other notice. Under the circumstances he cannot be held accountable for his failure to take an appeal to the Commission and we cannot agree with the trial judge that he was charged with the duty of investigating the records of the Police Department and of the City Civil Service Commission and making inquiry regarding the status of his case. As far as the record of this case shows, the only notice he ever had was the original notice of the charges which had been preferred against him on January 18, 1947 and in which he was informed that he would be notified later of the date of trial.
It is suggested that during all of this period defendant might have applied for reinstatement. This suggestion overlooks the fact that during all that time a criminal charge was pending in the Criminal District Court against him and obviously a claim for reinstatement would have been a vain and useless formality. Whilst it appears that the period of time from the filing of charges against him to the final disposition of the criminal case was unduly long, the delay was in no manner attributable to him. He lost no time after his acquittal in taking steps to be reinstated for it was on the day following his discharge that he made demand on the Superintendent of Police for reinstatement.
With regard to cases of this character involving suspension of an employee, for which the law apparently has made no provision, and in which the reinstated employee demands his back salary, a very pertinent observation made by this Court, is found in the case of State ex rel. Charles v. Board of Commissioners of Port of New Orleans, 159 La. 69, 77, 105 So. 228, 230. The demand for back salary which had been made in that case was held to be premature because the criminal charges against the suspended employees were still pending. However, the Court left but little doubt as to what its decision would have been, depending on the outcome of their trial in the Criminal Court. This is what it said:
*784 “The law has made no express provision for the suspension of defendant’s employees 'pending their trial. But it is manifest that a suspended employee has no just cause for complaint. He is indeed entitled to a speedy trial if he demands 'it, and the courts will see that he'gets it without unreasonable delay. If, on trial, he is found guilty of the charge and duly removed, that ends the matter, since nothing in the law contemplates that the board should keep and pay an incompetent, or negligent, or dishonest employee; and thus his final discharge after trial relates back to the time when he earned such discharge by his own improper conduct. And if, on trial, it is shown that he has not merited discharge, then his suspension is a mere enforced vacation for which the board must pay him as if he had never been suspended." (Emphasis ours.)
- As was' stated, the defendant in this case is not to be held accountable in any manner for the delay in the trial of the State’s criminal case against-him.
•The amount of back- salary claimed by the defendant in his reconventional demand does not seem to be disputed. The judgment of the district court incorrectly rejected that demand and it will have to be reversed.
For the reasons stated it is ordered, adjudged and decreed that the judgment appealed from be, and the samé' is héréby reversed, annulled and set aside and it is how ordered that there be judgment in favor of the defendant, William C. Jackson, on his reconventional demand, and against the City of New Orleans, in the full and entire sum of Ten Thousand, Two Hundred Seventeen and 50/100 ($10)217.-50) Dollars, with legal interest from date of judicial demand until paid and all costs.
McCALEB, J., concurs with written reasons.