647 So.2d 1339 (1994)
Farrell BLAPPERT
v.
DEPARTMENT OF POLICE.
No. 94-CA-1284.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
*1340 Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, for appellant, Farrell Blappert.
Robert Early, Asst. City Atty., Jesse J. Marks, Deputy City Atty., Avis Marie Russell, City Atty., New Orleans, for Appointing Authority, New Orleans Police Dept.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
In this civil service case, we consider the propriety of a decision of the Civil Service Commission ("the Commission") that denied an award of backpay to an employee who successfully appealed his termination from the New Orleans Police Department ("the Department"). We also consider an appeal by the Department seeking to overturn the Commission's reinstatement order. For the reasons that follow, we affirm in part and reverse in part.

FACTS

Procedural History
Farrell Blappert ("Blappert"), a permanently classified employee of the New Orleans Police Department, was promoted from Police Officer III to Police Officer IV on January 29, 1993. As part of the requirement *1341 for this promotion, he was required to undergo a substance abuse test. On February 5, 1993, Blappert provided a sample of his urine to Marine Medical Unit as required. That test revealed the presence of 500 mg/ml of Tetrahydrocannabinol, a marijuana metabolite. In accordance with Department policy, Blappert was dismissed from the force on April 21, 1993.
Blappert appealed his dismissal to the Commission, arguing that his due process rights had been violated. He prevailed on this claim and was reinstated as a member of the police force. However, the Commission refused to grant him an award of backpay, stating that its decision to reinstate Blappert was based "purely on procedural grounds."
Blappert then filed this appeal, which attacks only the Commission's denial of an award of backpay and the restoration of other employment benefits. The Department filed its own appeal, asking that this Court overturn the Commission's order reinstating Blappert. For the reasons enumerated below, we affirm the decision of the Commission as to Blappert's reinstatement, but reverse its decision with respect to backpay and other benefits.

Relevant Facts
Blappert was suspended from duty by written notice on February 19, 1993. He was accused of substance abuse in violation of departmental rules concerning the use of drugs because he tested positive for marijuana, of violating various federal, state, and city laws, and of failing to answer truthfully all questions asked of him regarding his drug use. Blappert was offered a pretermination hearing on April 20, 1993, wherein he was to be "afforded an opportunity to present any mitigating circumstances or explanations." However, this "hearing" was aborted shortly after it began and before Blappert was able to present any explanations or evidence. As Blappert was leaving this "hearing," his attorney was given a six-page, typed letter of termination from the Superintendent of Police in which the Superintendent concluded that Blappert had committed the violations with which he was charged.
Blappert appealed his dismissal to the Commission and the matter was assigned to a Hearing Examiner who conducted a hearing on July 26, 1993. At the hearing, Blappert contended that the urine sample that tested positive was not his. Blappert testified that after he gave his sample, it was placed on a crowded counter with a large number of other samples before the labelling process was completed. Blappert indicated that he did not observe the label containing his signature being affixed to the urine sample that he had given to the technician.
Pat Pizzo, director of toxicology at Laboratory Specialists, Inc. ("LSI"), testified as the supervisor certifying the results of Blappert's drug test. She was also allowed to testify as to the normal customs and practices of the laboratory regarding the handling of urine samples and the testing procedures. However, the actual collection of samples was performed by Marine Medical Unit. The technician who actually collected the urine specimen from Blappert was no longer with the company and no other official from Marine Medical Unit testified regarding the collection procedures. The evidence showed that Blappert's urine specimen was one of twenty-seven picked up from Marine Medical Unit on the date in question. The appointing authority offered no evidence to rebut the testimony of Blappert that the counter on which his specimen was placed was crowded with other urine samples.
Sgt. Nicholas Molligan, Officer Blappert's immediate supervisor for more than seven years, testified that Blappert was an exemplary employee who took every opportunity to improve his skills and educate himself in his field. Blappert was a supervisor in the Photographic Lab. Blappert studied the new machinery and read all the manuals, and according to Molligan, had saved the city thousands of dollars by learning to maintain and repair the lab machinery himself. Sgt. Molligan is a twenty-seven year veteran of the police force and Commander of the Crime Lab. The sergeant further testified that as a polygraph examiner, he has had the opportunity to interview extensively persons *1342 who both used and dealt drugs. Molligan had observed Blappert come in at all hours of the night when he was called and never saw any evidence that Blappert was abusing drugs or any other substance. According to Molligan, Blappert's job duties required that he operate machinery and mix toxic and volatile chemicals. Molligan has never observed any diminution in Blappert's skills or any change in his work habits.
The hearing examiner found Blappert to be a very credible witness and concluded that a mistake had been made in Blappert's test. The hearing examiner noted that Blappert had a ten-year record of exemplary service in the Department, that the technician who labelled the sample was unavailable to testify, and that Marine Medical Unit failed to produce any other witness to testify regarding its collection procedures or to rebut Blappert's claim that his sample had been mislabelled. Additionally, the examiner noted that the sample was requested for a promotion and not pursuant to the random testing program and that Blappert knew that he would be required to take a drug test at least three weeks prior to the actual test, although he was not notified of the actual date until just before the test. In addition, Blappert had taken a drug test barely six months earlier with negative results. The hearing examiner forwarded a copy of the hearing transcript, the documentary evidence, and his findings to the Commission for its review and decision on July 28, 1993.

DISCUSSION
Under the Louisiana Constitution of 1974, a permanently classified civil service employee may be disciplined by an appointing authority only for cause expressed in writing. La. Const. art. X, § 1(B). "Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged." Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). The Civil Service Commission has the duty to decide independently from the facts presented whether legal cause existed for the disciplinary action taken against an employee and, if so, whether the punishment imposed was commensurate with the dereliction. Walters v. Department of Police, 454 So.2d 106, 112 (La.1984); Johnson v. Department of Police, 575 So.2d 440, 443 (La.App. 4th Cir.1991). The Police Department, as the appointing authority in this case, has the burden of proving by a preponderance of the evidence the facts underlying the charges and that the conduct complained of impaired the efficiency of the public service. Department of Social Servs. v. Schneeweiss, 588 So.2d 1185, 1186 (La. App. 1st Cir.1991). The appointing authority must also prove that the actions complained of bear a real and substantial relationship to the efficient operation of the public service. Johnson, 575 So.2d at 444. The factual findings of the referee will not be set aside unless they are manifestly erroneous. Goins v. Department of Police, 570 So.2d 93, 94 (La.App. 4th Cir.1990).
In rendering its decision, the Commission found that the termination of Blappert was insupportable because of the circumstances surrounding his dismissal. First, there was the question of whether the urine sample tested was actually Blappert's. Second, there was the issue of a possible violation of the Blappert's due process rights by the Department's curtailment of his pretermination hearing before he was given an opportunity to rebut the findings, and by presenting him with the written dismissal notice immediately after the aborted hearing. The Commission ordered that Blappert be reinstated as of the date of its decision, April 25, 1994. However, the Commission found that the Blappert's positive test results were accurate and that there had been strict compliance with all drug testing procedures by the laboratory. The Commission therefore denied all backpay.
In reviewing the Commission's findings of fact, the appellate court should not reverse or modify a finding unless it is clearly wrong or manifestly erroneous. Walters, 454 So.2d at 113; Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993). Generally, a decision of the *1343 Commission will not be overturned by the appellate court unless it was arbitrary, capricious, or an abuse of discretion. Montgomery v. Department of Streets, 593 So.2d 1352, 1355 (La.App. 4th Cir.1992).
In a case such as this, where the only damning evidence against an employee is the results of a drug test and no corroborating evidence of substance abuse exists, the chain of custody becomes the critical issue and must be proven by the appointing authority with great care. To satisfy this standard, "[t]he party seeking to introduce test results must first lay a proper foundation by connecting the specimen with its source, showing that it was properly labelled and preserved, properly transported for analysis, properly taken by an authorized person, and properly tested." George v. Department of Fire, 93-2421, p. 13 (La.App. 4 Cir. 5/17/94) 637 So.2d 1097, 1106. In George, we upheld the termination of a firefighter from the City of New Orleans Fire Department who had tested positive for cocaine use. The drug test that George failed was prompted by his being stopped by police officers for reckless driving. Suspecting that George was on some sort of drug, the police officers contacted George's superior who later took George to Marine Medical Unit for a urine sample. At the hearing on the matter, a number of witnesses were called to authenticate the chain of custody, including the specimen collector and the courier who delivered the sample from the collection unit, Marine Medical Unit to the testing laboratory, LSI. Each witness who testified in George had personal knowledge of their portion of the chain of custody and, when taken together, their testimony demonstrated a complete and unbroken chain of custody from collection through analysis of results.
Based upon our review of the evidence in the record of this case, we find that the Commission was clearly wrong and committed manifest error in ruling that the results of the Blappert's drug test were accurate. In fact, this conclusion contradicts the Commission's own assessment that there was no way to prove that the urine sample tested was actually that of Blappert. The failure of the Department to produce a representative from Marine Medical Unit ultimately is fatal to its case. Blappert's denial of drug abuse, combined with his excellent job performance and recent negative drug screening, raised a strong possibility that his urine sample had been contaminated or that there was some other break in the chain of custody. The Department offered no testimony to assuage these concerns. It called only a single witness, Ms. Pizzo, the director of toxicology at LSI. She had no personal knowledge as to the specifics of the chain of custody in this case, and could only testify as to LSI's standard operating procedures. Unlike in George, in this case, no other witnesses were called by the appointing authority, the party bearing the burden of proof, and thus the chain of custody was not proven with great care. We therefore conclude that the Commission's ruling that Blappert's drug test results were accurate is clearly wrong. Thus, we find that the Commission was correct in upholding Blappert's reinstatement, although it should not have done so "purely on procedural grounds." Because we find that reinstatement is proper, we reject the Department's appeal attacking the reinstatement order. We turn now to the question of backpay and other benefits.
It is well established that a wrongfully discharged civil service employee is entitled to reinstatement with full pay from the date of his discharge. E.g., Dickson v. Richardson, 236 La. 668, 109 So.2d 51, 52 (1959). The Commission, upon a modification or reversal of a disciplinary action, may reinstate an appellant to his position, order back pay, restore the benefits and emoluments of office, and grant attorney fees. Department of Public Safety & Corrections v. Thornton, 625 So.2d 713, 716 (La.App. 1st Cir.1993); Lombas v. New Orleans Police Department, 501 So.2d 790, 791 (La.App. 4th Cir.1986). The Commission has the discretion to order back pay or not, depending on the particular circumstances of the case at issue. Thomas v. Department of Welfare, 454 So.2d 839, 840-41 (La.App. 4th Cir.1984).
In view of our holding that there was no legal basis for the termination of *1344 Blappert's employment, we find that the Commission's decision to withhold backpay was an abuse of discretion and was arbitrary and capricious. There is nothing in the particular circumstances of this case that would be grounds for depriving Blappert of all backpay and other benefits of employment to which he would have been entitled if he had not been wrongfully termination. Accordingly, we reverse the Commission's decision denying Blappert backpay and other benefits of employment and order that all such benefits be restored to him.

CONCLUSION
For the foregoing reasons, we affirm the decision of the Commission that ordered the reinstatement of Officer Blappert. However, we reverse the decision of the Commission that denied Officer Blappert backpay and all other emoluments of employment from the date of his discharge. Officer Blappert is entitled to these and we hereby award them to him. All costs of these proceedings shall be borne by the Appointing Authority, New Orleans Police Department.
AFFIRMED IN PART, REVERSED IN PART.