hWALTZER, Judge.

STATEMENT OF THE CASE

This is an appeal from a ruling of the Civil Service Commission of the City of New Orleans (hereinafter “the Commission”), denying the claim of Christopher Maurice that defendants then Superintendent Joseph Or-ticke and the City of New Orleans, Department of Police failed to adhere to the Civil Service Rules and established procedures in filing a vacancy in the position of Senior Special Investigator in the Internal Affairs Department of the New Orleans Police Department.

STATEMENT OF FACTS

The Senior Special Investigator in Internal Affairs was transferred to the Fifth District. Lt. Mason Spong began performing the duties of the vacant position. The Director and Assistant Director reviewed the Civil Service Rules and the written procedure used to fill the last Senior Special Investigator vacancy. They reviewed the individuals eligible for promotion and met with the Superintendent to provide him with the list of names. When presented with the list, the Superintendent stated that he already had somebody in mind who was not on the list, namely Lt. Carl Haydel who was a personal friend. Meanwhile, Lt. Christopher Maurice discovered the vacancy. At the time the promotion in question was made, Maurice was a permanent Lieutenant on the Captain’s Register, meaning that he had successfully completed both written and oral examinations for the next highest position and was eligible for promotion. Because he was on the Captain’s Register, he expressed an interest in the position. The Superintendent then sent a letter to Civil Service informing them that he was suspending the rules and appointing Lt. Haydel. The instant litigation ensued.
I ¡STANDARD OF REVIEW
In reviewing the Commission’s findings of fact, the appellate court should not reverse or modify a finding unless it is clearly wrong or manifestly erroneous; generally, a decision of the commission will not be overturned by the appellate court unless it was arbitrary, capricious, or an abuse of discretion. Blappert v. Department of Police, 94-1284 (La.App. 4 Cir. 12/15/94), 647 So.2d 1339, 1342-1343 (La.App. 4th Cir.1994).

DISCUSSION

This litigation arises out of procedures set up relative to an unpublished suit before this court, Burkhart v. Dept, of Police, No. 92-CA-2574 (May 13,1993), 618 So.2d 1248 (La. App. 4th 1993) writ denied 629 So.2d 1167 (La.1993)[1]. According to testimony in the instant suit by Joseph Michael Doyle, Jr., Director of Personnel of the Civil Service Commission during the Burkhart litigation and Director of the Civil Service Commission during the instant litigation, he issued a letter on May 10, 1991 to then Police Superintendent Arnesta Taylor stating several things including that the current practice of *503 assigning personnel to perform tasks which were part of higher job positions without giving them commensurate pay and rank subjected the City to liability and that positions in Internal Affairs had to be filled in accordance with Civil Service Rule VI Section 1.1. Rule VI Section 1.1 provides:
Vacancies in positions in the classified service may be filled by demotion, transfer, reinstatement, reemployment, promotion, original appointment, or temporary appointment.
Preference shall be given to the methods named in the order in which they are listed above, under the conditions and subject to the restrictions and limitations set forth in the Rules.
A vacancy shall be considered filled under any of the methods specified, and employment thereunder effective, as of the date on which the employee enters into the duties of the position, in accordance with the Law and the Rules. (Emphasis added).
The vacancy in the instant case was filled by the temporary appointment of Lt. Carl Hay-del, the least preferred method and the last method in sequence in the Rules.
IsOn May 31, 1991, the Civil Service Commission issued a memo regarding the Special Investigator Series. The proposed method for filling the Senior Special Investigator position was:
SENIOR SPECIAL INVESTIGATOR is at pay grade 58 which is 12½% above Lieutenant. At present two positions have been allocated to this class, the Administrative Administrator and the Criminal Administrator. Minimum qualification requirements are permanent status as a Police Lieutenant and an acceptable background screening. The method of filling the positions shall be as follows:
1. Survey all Captains to see if they wish to be demoted provisionally to this position.
2. Survey all permanent Lieutenants on Captain’s register to see if they are interested in a provisional appointment.
3. Allow a provisional promotion of a permanent Lieutenant. (Emphasis added).
It is unclear from the record whether the procedures were formalized, but they were used to fill the IAD Senior Special Investigator vacancies prior to the instant suit. Thus, even if the procedure was never formalized, it was used as the de facto criteria and procedure.
Police Superintendent Joseph M. Or-ticke, Jr.’s memo of September 3,1993 shows that he believed the criteria and procedure to be binding upon him:
In a recent attempt to fill a critical need in the Department’s Internal Affairs Division, the criteria for the Special Investigator series has 'proven restrictive.
The existing criteria may prevent the appointing authority from filling vacancies or assigning the appropriately qualified personnel as deemed necessary.
Such procedures and requirements may not accurately or correctly address the actual job responsibilities of the positions. It is therefore requested that such requirements be suspended pending the revamping of those requirements and procedures. Further, it is requested and strongly recommended that we meet as soon as possible to discuss said revamping of this series’ required method of filling vacancies and necessary qualifications.
1⅜In the interim, Lt. Carl Haydel, Social Security Number (Omitted), has been transferred[2] to the Internal Affairs Divi *504 sion (Criminal), effective September 5, 199S.
In accordance with Civil Service Rule 4, Para 2.2, it is requested that his transfer be treated as a Special Assignment and that his pay grade be raised to grade 58 from the effective date of his transfer. (Emphasis added.)
Superintendent Orticke’s method of promotion of Lt. Haydel was in violation of Civil Service Rule VI Section 3 which provides:
3.1 Upon a request from an appointing authority to fill a position other than by demotion, transfer, or reinstatement, the Director shall certify to the appointing authority the names of three eligibles for such position of the class of the vacant position, and if more than one vacancy is to be filled, the name of one additional eligible for each additional vacancy. In cases of demotion, transfer or reinstatement, the Director shall approve or disapprove the name of the person submitted by the appointing authority.
3.2 (a) The eligibles certified shall be the highest ranking eligibles willing to accept employment, ranked in the following order: (1) all the eligibles on the appropriate reemployment list, if any; (2) those on a promotion list, if any; (3) those on an entrance employment list. All the names on any one of such lists shall be exhausted before any names are certified from another list, but the names certified may be taken from two or more lists if necessary to make a certification of three eligibles. Names shall be certified from each list in the order of their rank on that list.
|s3.2 (c) Within 45 days after such names are certified, the appointing authority shall appoint one of those whose names are certified to each vacancy which is to be filled ...
The above quoted Civil Service Rules are derived from Article 10 Section 7 of the Louisiana Constitution of 1974 which provides:
Permanent appointments and promotions in the classified state and city service shall be made only after certification by the appropriate department of civil service under a general system based upon merit, efficiency, fitness, and length of service, as ascertained by examination which, so far as practical, shall be competitive. The number to be certified shall not be less than three; however, if more than one vacancy is to be filled, the name of one additional eligible for each vacancy may be certified ...
Thus, Ortieke’s promotion of Lt. Haydel was further in violation of the Louisiana Constitution.
In September 1993, the position of Senior Special Investigator in the Internal Affairs Division became vacant. LAD Director Richard L. Reeves and Assistant Director Henry Aschebrock both testified that they initially reviewed the regulations set out in the May 31st Memo because it had been used to fill Senior Special Investigator vacancies in IAD since the date of the memo, and they believed that it was required by law that it be followed in this case. They then reviewed the list of people eligible on the Captains Register, evaluated them under the criteria, prepared a list of three recommendations and met with the Superintendent for the purpose of providing him with that information.
When presented with the list of the three recommendations, the Superintendent stated that he already had someone in mind, namely Lt. Carl Haydel, because he personally knew him.
Meanwhile, Christopher Maurice, a permanent Lieutenant on the Captain’s Register who was eligible for promotion under class 2, discovered the vacancy and was interested in the position.
However, the Director and Assistant Director testified that they recommended Lt. Mason Spong, who was already performing the duties of the Senior Special Investigator’s *505 job, although he was not receiving the pay or rank for doing that job.
JeLt. Spong’s performance of a job without receiving appropriate pay or rank is the same situation as the Burkhardt suit that prompted Michael Doyle’s letter of May 10, 1991 and the corresponding establishment of objective criteria and a method of promotion for the Internal Affairs Division, as opposed to a subjective criteria such as “personal knowledge” or “personal evaluation”.
Lt. Haydel was not qualified under either the first level or the second level criteria because he was not on the Captain’s Register and he had not taken either the oral or the written exam. Lt. Haydel met only the minimum standards of class 3, whereas there were other individuals more qualified than he in the higher class 1 and class 2 levels. In short, Lt. Haydel was not the best qualified officer for the job.
The Superintendent did not “1. Survey all Captains to see if they wish to be demoted provisionally to this position” or “2. Survey all permanent Lieutenants on the Captain’s register (such as plaintiff Christopher Maurice) to see if they are interested in a provisional appointment.” Instead, the Superintendent wrote to Civil Service suspending the rules on September 3 and provisionally promoted Lt. Haydel effective September 5. The testimony and Civil Service date stamp indicate the Civil Service Commission did not receive the Superintendent’s letter until September 7, two days after the promotion. The memo was dated September 3, Lt. Haydel’s appointment was effective September 5 and Civil Service received the memo September 7th, after the appointment was a fait accom-pli. The letter received by Lt. Haydel notifying him of his new position was not dated until December 29,1993 and provided in part as follows:
Dear Mr. Haydel:
CONGRATULATIONS! There being no appropriate list of eligibles, you have received a provisional appointment to a position in the Civil Service.
The statement that there was no appropriate list of eligibles was erroneous.
Plaintiff Christopher Maurice sued arguing that he was denied the opportunity to apply under the de facto established procedure of surveying all permanent Lieutenants on the Captain’s Register to see if they are interested in a provisional appointment. We agree, and find the contrary ruling by the Commission to have been manifestly erroneous, unsupported by the record, arbitrary and a clear abuse of its discretion.
RThe Superintendent testified that he felt he should not be restricted by Civil Service rules where he personally knows the officer he would like to promote.
The purpose of the civil service system is to do away with promotions resulting from personal relationships and replace it with promotions resulting from the objective criteria of examination, years of service, and education level. When Lt. Haydel failed to meet the criteria, the Superintendent sought to have the rules suspended so that he might appoint “appropriately qualified personnel”. The phrase “appropriately qualified personnel” was merely a euphemism for favoritism.
In Sanders v. Dept. of Health & Human Resources, 388 So.2d 768, 771 (La.1980) remanded 394 So.2d 629 (La.App. 1st, 1980) writ denied 399 So.2d 602 (La., 1981), the Supreme Court held:
(The Civil Service Rules) embrace the merit system, and their intent is to preclude favoritism, (emphasis added).
In Owen v. New Orleans City Civil Serv. Com’n, 371 So.2d 364, 366 (La.App. 4th Cir. 1979) writ denied 374 So.2d 658 (La.1979) this court stated:
The entire scheme of Civil Service or the merit system for public employment is to insure that permanent appointments are obtained on merit, i.e., on the basis of competitive examinations. (emphasis added).
Our courts repeatedly have held that the consideration of any non-merit factor is discrimination. Ramirez v. Department of Social Services, 603 So.2d 795 (La.App. 1st Cir.1992) writ denied 608 So.2d 195 (La. 1992) — (Non-merit factor — Differential pay within jobs due to educational attainment); Marcantel v. Department of Transp. and *506 Development, 590 So.2d 1253 (La.App. 1st Cir.1991) (Non-merit factor — facilitation of a lawsuit settlement); Mixon v. New Orleans Police Department, 407 So.2d 793 (La. 4th Cir.1981) appeal after remand affirmed 430 So.2d 210 (La. 4th Cir.1983) — (Non-merit factor — age); Gandy v. State Civil Service Commission, 498 So.2d 765 (La.App. 1st Cir. 1986) — (Non-merit factor — uncounted prior service time).
We find that Lt. Carl Haydel’s promotion constituted political favoritism and because it was based upon the non-merit factor of political favoritism, it constituted discrimination.
|gWe note “an employee need not prove that he had the right to be considered for a particular position or promotion in order to sufficiently allege that he was denied the opportunity to apply for the position,” Mar-cantel, supra at 1258. The evidence does not establish that Christopher Maurice would have received the promotion if established procedures had been followed. Accordingly, we cannot grant to plaintiff the salary and other emoluments of office he would have received had he been promoted to this position. Since the promotion was improperly granted to Lt. Haydel, the New Orleans Police Department must reopen the qualification procedure for the position.
For the reasons discussed, the judgment of the Civil Service Commission is reversed.
The New Orleans Police Department is ordered to reopen the qualification procedure for the position of Senior Special Investigator and fill the position in accordance with the established Civil Service Rules.

REVERSED AND RENDERED.

. While it is the custom of this court not to cite unpublished opinions for holdings of law, the instant case is referenced for factual background and not for a legal holding.

. Although the Superintendent used the word "transferred” in his letter, Lt. Haydel’s move was a promotion as defined by Civil Service Rule I Section 43, not a transfer as defined by Civil Service Rule I Section 62.
43. "Promotion”: a change of an employee in the classified service from a position in one class to a position in another class for which a higher pay grade is provided in the pay plan.
62. "Transfer”: the change of an employee from a position in one department to a position in another department wherein dissimilar requirements are not present in the position.
In the instant case, dissimilar requirements are present between the two positions and the Sr. *504 Special Investigator position carried with it at least a 12½% pay increase, hence Lt. Haydel was promoted not transferred.