I .PATRICIA RIVET MURRAY, Judge.
Plaintiffs appeal the trial court’s affirming of a Civil Service Commission decision that awarded them supplemental pay but declined to order the appointing authority, the New Orleans Police Department [NOPD] to make certain promotions. The NOPD has answered the appeal seeking to have the award of supplemental pay reversed. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
The six plaintiffs, namely Samuel Bua, Keith Ferguson, Joel Schmidt, Frank Va-carella, Steven Dunn, and Fenner Sedge-beer, are police sergeants who each served as the commander of a platoon during some period of time between 1996 and 1998. Because they believed their positions required them to perform the duties of a lieutenant, they notified the Director of the Civil Service that they were working out of class and were therefore entitled to *1216 additional compensation under the Civil Service rules. A Civil Service investigation determined that the sergeants were indeed working out of - class and were therefore entitled to additional compensation. However, the NOPD opposed the Civil Service’s 12recommendation and refused to implement it The police sergeants then appealed to the Civil Service Commission [hereinafter, “the Commission”]. The Commission conducted evidentiary hearings on six separate dates: June 15, 1999; July 15, 1999; August 12, 1999; September 15,1999; October 21,1999; arid March 22, 2000. On September 29, 2000, the Commission rendered its decision, finding that the officers were entitled to additional compensation pursuant to Civil Service Rule III, Section 4.1, and granting them back pay.
The police officers then filed a Motion to Reconsider, arguing that the Civil Service Commission Rules also required the NOPD to fill the vacant lieutenants’ positions by making promotions. In response to the motion, the Commission rendered a second decision on May 1, 2002. The Commission held that although the appellants/officers were working out of class and were therefore entitled to be paid as lieutenants for the periods of time during which they had performed in that capacity, the Commission could not order the NOPD to promote them because it could not conclude, based on the record, that the appellants would have been the ones chosen to fill the promotional vacancies that existed.
The police officers appealed the Commission’s decision to the district court, which heard the matter on January 23, 2004. On March 5, 2004, the district court affirmed the Commission’s ruling. The officers now appeal the district court’s judgment. Appellants assert that they do not seek, nor have they ever sought, a court decision ordering the NOPD to promote each of them to the rank of lieutenant; nevertheless, they contend the Commission and the district court both 13erred by failing to order the NOPD to make the promotions from a 1994 list of those eligible for same, according to the procedure mandated by Civil Service Rule III, Section 4. Conversely, the NOPD argues that it would have been improper for the court to have ordered it to promote officers from an out-of date, discarded list to lieutenant vacancies that the NOPD claims never existed, or alternatively, if they did exist in 1996-1998, do not exist now. In answer to the appeal, the NOPD also contends that the appellants were not performing lieutenants’ duties during the relevant time periods, and therefore the district court erred by affirming the award of additional compensation.
STANDARD OF REVIEW
An appellate court reviews findings of fact made by the Civil Service Commission according to the manifest error standard; however, a decision of the Commission should not be overturned unless it is arbitrary, capricious, or an abuse of discretion. Maurice v. Department of Police, 94-2368, p. 2 (La.App. 4 Cir. 6/7/95), 657 So.2d 501, 502 (citing Blappert v. Department of Police, 94-1284 (La.App. 4 Cir. 12/15/94), 647 So.2d 1339, 1342-1343).
DISCUSSION OF LAW AND FACTS
There are two issues for us to consider on appeal: (1) whether the NOPD was required ,by Civil Service Rule III, Section 4, to pay additional compensation to the appellants for the time they served as platoon commanders; and (2) whether [4the NOPD was required by the same rule to promote candidates to vacant lieutenant positions from the then existing pro *1217 motional list.[1]
Civil Service Rule III, Section 4, entitled “TEMPORARY WORK IN A HIGHER CLASSIFICATION,” provides, in pertinent part:
Subject to the approval of the Director, whenever a regular employee occupying a position in a non-exempt classification is required by the appointing authority to temporarily perform, on a full-time basis, duties in a vacant, full-time position of another classification having a higher pay grade, the employee shall be entitled to receive additional compensation subject to the following conditions: (a) The position to which the employee is to be assigned must be a budgeted vacancy. A budgeted vacancy is defined as a full-time position which has been authorized by the Chief Administrative Office and given an official position control number, and in which there is no incumbent in official pay status.
* * * sis * *
(e) If a budgeted vacancy occurs and an appropriate employment list is available for certification, the appointing authority shall not require an employee to work temporarily in the higher classification, but rather must submit appropriate personnel forms to fill the vacancy on a permanent basis.
With regard to the first issue, the NOPD argues that the Commission’s decision awarding additional compensation was arbitrary and capricious. We disagree.
At its hearings, the Commission heard extensive testimony from the plaintiffs and from several captains who served as their supervisors during the relevant time periods. Each of the plaintiffs testified that he performed the same duties as a lieutenant while serving as platoon commander. Specifically, each sergeant testified that he supervised at least one other sergeant during that period. | .^Various plaintiffs testified that supervision of other sergeants included approving their furlough time, training them, giving them orders, and evaluating their performance. Sergeant Bua, who commanded the Rape Squad, testified that he carried the same radio control number as the lieutenant who had served before him, and that on weekends when the captain and the assistant district commander (a lieutenant) were off, he was in charge of the entire district. Sergeant Sedgebeer testified that he was appointed temporary assistant commander of the fifth district and served in that capacity from December, 1996, until approximately March or April of 1997.
All the police captains, each of whom commanded a district in which at least one of the plaintiffs was serving as a platoon commander, testified that the plaintiffs were performing the same duties and had the same responsibilities as a lieutenant. For example, Captain Ray Shackelford, who supervised plaintiffs Ferguson and Schmidt, testified that platoon commanders were always lieutenants except temporarily when there were not enough lieutenants to fill all the spots. He admitted, as did all the other witnesses, that he knew of no document stating that only a lieutenant can command a platoon. However, Captain Shackelford testified that based on his thirty years of experience on the police force, he was sufficiently familiar with the job description of a lieutenant to know that the sergeants in command of platoons were performing the duties of a lieutenant. His testimony was echoed by Captain Eddie Compass, who supervised Sergeants Dunn and Vaearella, and by Captain Ron Quinton and Captain Ronald Paisant, each *1218 of whom supervised Sergeant Bua at various times. The captains also testified that the sergeant platoon commanders reported directly to them as captains rather than to lieutenants.
|fiThe plaintiffs also presented the testimony of Mr. J. Michael Doyle, who at the time of his testimony was the Director of Personnel for the City of New Orleans, as well as the Director of Civil Service. Mr. Doyle was qualified as an expert in the interpretation of Civil Service rules and regulations. He testified that the investigation by his staff included consideration of the written job descriptions of lieutenant and of sergeant, examination of other documents, and also interviews of higher ranking police officers. Mr. Doyle also notified the NOPD of the sergeants’ assertions and requested a response to specific questions, including the number of budgeted vacancies at the lieutenant level and the districts in which these vacancies existed. Mr. Doyle also questioned the NOPD as to whether the job descriptions for lieutenant and/or sergeant, a copy of which he attached to his letter, had changed.
Superintendent of Police Richard Pennington responded in writing confirming that there were 25 budgeted vacancies for police lieutenant and listing the areas in which each occurred. He also stated that the job descriptions for each rank had not changed. Chief Pennington stated, however, that the platoon system had been completely replaced by the use of squads; that a squad was smaller than a platoon; and that it was his intention that all lieutenants who were then serving as squad commanders would be replaced by sergeants as soon as that became feasible given the shortage of sergeants.
Despite Chief Pennington’s response, Mr. Doyle concluded from his examination of the job descriptions and his investigation in the field that the plaintiffs were indeed working beyond their classification and were performing lieutenant’s duties at the same time that there was an abundance of vacancies in lieutenant positions. The job descriptions Mr. Doyle relied upon, which were |7introduced into evidence, indicate that they were last updated in 1981 in the case of the lieutenant classification and in 1953 in the case of the sergeant classification. Mr. Doyle testified that the two job descriptions overlapped significantly. However, he believed that the most distinguishing feature of a lieutenant’s job was the supervision of sergeants. Mr. Doyle could not confirm whether the exhibits he referred to actually represented the most current updates of those job descriptions, but stated that another witness, Lisa Hudson, from the test validation unit, would be able to answer that question.
Lisa Hudson, the head of the Classification and Compensation Division that investigated the sergeants’ claims, testified that there had been no changes made to the job descriptions of police lieutenants and sergeants at the time she conducted the investigation. She also stated it would have been the responsibility of the NOPD to notify the Civil Service if the NOPD wanted to make any such changes. In addition to the written descriptions, she also considered the job analyses that had been done by the Civil Service staff from doing interviews and making observations in the field. Ms. Hudson stated that the written job descriptions were considered “unofficial,” and that although those descriptions were considered by her department in preparing the job tests used to determine eligibility for each classification, her staff also did field observations and interviews, and consulted a captain in the police department who was considered an expert in the field. In her investigation, Ms. Hudson concluded that the most significant *1219 criteria distinguishing a lieutenant’s job are the supervision of other sergeants and the fact that a lieutenant reports directly to a captain in the chain of command. She also determined that the plaintiffs were working out of class as lieutenants and that Isthere were budgeted vacancies for lieutenants in the same divisions and at the same time that the plaintiffs were serving as platoon commanders.
The final witness for the plaintiffs was Shelley Stokes, who testified she was a psychometrieian who worked in Testing and Validation for the Civil Service. Ms. Stokes’ job was to develop and evaluate exams for entry level and promotional level positions in the Civil Service. She testified that in preparing the test for lieutenant or sergeant, she did not just rely on the written job descriptions, but would actually go in to the field and observe and ask questions of the officers. Ms. Stokes testified that a new test (or “KSA”) for police lieutenant was developed in 1997 and was first used in June of 1998. Ms. Stokes testified that the criteria in the new KSA were not significantly different from the 1981 job description, just more detailed. She also stated that the KSA for sergeant, which was updated in 1996 and implemented in 1997, was hot significantly different from the 1958 description.
The only witness for the NOPD was Assistant Superintendent of Police Roñal Serpas. Captain Serpas testified that the NOPD underwent a complete reorganization in 1996 when it began to implement a new structure designed to decentralize the police department. At that time there was a manpower shortage in the entire department of somewhere between 200 and 400 officers. The plan called for the department to move from having three platoons per district, each of which worked eight-hour shifts, to having four platoon/squads[2] per district, each of which worked twelve-hour shifts. The NOPD notified Civil Service of the plan before it |9was implemented, but did not specifically state that sergeants would be in command of platoons.
Whereas in the prior system each platoon had been commanded by a lieutenant, with anywhere from two to five sergeants under him, Captain Serpas testified it was the intention of the department that after the reorganization, each platoon would be headed by a sergeant. Captain Serpas also testified that when the plan was first being implemented, there were not enough sergeants to meet this goal; in fact, there was a shortage of 35 sergeants. However, according to Captain Serpas, there was a surplus of approximately five lieutenants. The department began gradually putting sergeants, including the plaintiffs, as commanders of the new platoons. While some platoons were still commanded by lieutenants, the department kept moving toward its goal of having all sergeant platoon commanders, which became possible in the summer of 1998 with the promotion of approximately fifty officers to the rank of sergeant. During this time period, the department did not need or want to make any promotions to lieutenant, despite an existing eligibility list. The department in fact wanted to allow the list to expire and develop a new one. However, on January 1, 1999, the entire reorganization plan was abandoned when the department went back to eight-hour shifts, and the sergeant platoon commanders were eventually replaced by lieutenants.
Captain Serpas maintained that during the reorganization, the lieutenants who *1220 continued to serve as platoon commanders were doing sergeant’s work, not the other way around. He stated that the sergeants who acted as platoon/ squad commanders did not actually “command” other sergeants, although they did supervise other sergeants. Captain Serpas testified that the duties of a lieutenant and those of a sergeant overlap, but there are some tasks that are distinctive to |ineach. These include the filling out of “trip sheets,” which was required of all sergeants, including platoon commanders, but not of lieutenants. A trip sheet is a record whereby a police officer accounts for the hours hé has worked in a day. When asked what duties lieutenants have that sergeants do not perform, Captain Serpas said the two main ones are maintaining a personnel file on other sergeants including such things as counseling and advising them of performance deficiencies, and serving as the assistant commander (second in command) of a district. Captain Serpas disputed that any of the plaintiffs had been appointed as assistant commander of a district.
Captain Serpas stated' that “vacancies by budget code” and “budgeted vacancies” are not the same thing; therefore documentary evidence showing there were fifteen lieutenant vacancies by budget code in April of 1997 does not necessarily indicate budgeted vacancies. The difference is that “vacancies by budget code” indicates the areas in which lieutenants were working when they either retired or left the police department, while “budgeted vacancies” indicates positions that are included in the budget when the year starts which have not yet been filled. Captain Serpas identified certain police manpower reports, which showed fewer lieutenant vacancies than there were sergeant platoon commanders in some districts. Captain Serpas maintained that all the tasks performed by the plaintiffs as platoon commanders were covered by the “and other related duties” provision included in the job description of a sergeant, opining that a finding that the plaintiffs were working out of class would render this provision meaningless.
Upon review, we cannot say that the Commission’s decision to award the plaintiffs additional pay for working out of class was arbitrary, capricious, or manifestly erroneous. Much of the testimonial and documentary evidence clearly Insupports the conclusion that the plaintiffs who acted as platoon commanders were consistently performing duties that had been traditionally reserved to lieutenants, and also that there were at the same time budgeted vacancies for lieutenants in the same divisions where the plaintiffs were working, which vacancies the NOPD chose not to fill because of its reorganization strategy.
Because the written job descriptions for each classification consist mainly of a list of duties without clearly indicating which are most significant, and because the duties listed for sergeant and lieutenant overlap in many respects, the Commission was not wrong to rely on the testimony of witnesses to aid in its determination of whether the plaintiffs were performing lieutenant’s work. Under the heading “Distinguishing Features of Work” the job description of lieutenant emphasizes that a lieutenant can serve as second in command of a district and otherwise act in the capacity of the district commander when he is absent; at least one of the plaintiffs testified he was appointed assistant district commander temporarily and several testified they were the ranking officer in charge of the district on nights and weekends. Moreover, one of the functions listed under the heading “Examples of Work” for a lieutenant is “Supervises activities of a police patrol including sergeants, officers and others;” there is no corresponding duty listed in the job description of a *1221 sergeant. The one expert who testified and the overwhelming majority of lay witnesses indicated that supervision of other sergeants and direct reporting to a captain as one’s superior are the defining characteristics of a lieutenant’s position. We cannot find manifest error in the Commission’s decision to credit this testimony over Captain Serpas’ testimony that these aspects of the platoon commander’s job should be considered as merely “other related duties” expected of a sergeant.
|12With regard to whether each plaintiff was filling a position that constituted a “budgeted vacancy” within the terms of Civil Service Rule III, Section 4, the analysis is more problematic; however, we still cannot say the -Commission’s decision was manifestly erroneous given the evidence. Although none of the plaintiffs was able to give a position control number for the lieutenant position he claimed to be filing; there was sufficient evidence from which the Commission could reasonably infer each was filling a budgeted vacancy for lieutenant within the terms of Civil Service Rule III. Ms. Hudson testified that she found there were budgeted vacancies for lieutenant in each division in which the plaintiffs were working. Moreover, there was an abundance of evidence, including confirmation by the NOPD, that there existed more than six budgeted vacancies for lieutenant in the NOPD during all the relevant times when these plaintiffs served as platoon commanders, but the NOPD chose not to fill these vacancies. Thus, we cannot say it was manifestly erroneous for the Commission to conclude that the failure to pay these plaintiffs as lieutenants and to consider them for promotion to that rank constituted a violation of Rule III.
Turning to the second issue, we do not find that the Commission erred by refusing to order the NOPD to make six retroactive promotions to lieutenant at the time of trial using an out-dated, long abandoned eligibility list. Despite the plaintiffs’ argument, such a remedy is neither mandated by Civil Service Rule III, nor compelled by our prior decision in Maurice v. Department of Police, 94-2368 (La.App. 4 Cir. 6/7/95), 657 So.2d 501. In Maurice we ordered the NOPD to reopen the qualification procedure for a promotion that the NOPD had filled with an individual who was not on the promotional list in violation Civil Service Rule III. We also held that we were unable to order the NOPD to promote the plaintiff | iato that position because, although the plaintiffs' name appeared on the eligibility list, we could not say he would have been the one chosen to fill the position. The factual situation in Maurice is clearly distinguishable from that in the instant case. In the instant case, the reorganization of the NOPD that prompted the assignment of these sergeants to fill lieutenant positions ended in 1999. It is undisputed that the vacancies that existed then do not exist now. Some of the plaintiffs have in fact been promoted to lieutenant since they filed their complaints; others have retired or left the police force. Not all their names were on the original eligibility list, which is no longer in use. Ordering the NOPD to make such promotions now, even retroactively, would be nonsensical and virtually impossible to implement. We find nothing in the language of Civil Service Rule III that compels us to grant a remedy that has been mooted by subsequent events.
We therefore find that the district court did not err in affirming the Commission’s decision granting the plaintiffs’ supplemental pay. Accordingly, the judgment of the. district court is affirmed.
AFFIRMED.

. The record shows that some, but not all, of the plaintiffs’ names appeared on that list.

. Captain Serpas testified that the terms ''platoon" and "squad” were used interchangeably.