JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | New Orleans Police Department (NOPD) Officer James Allen appeals the decision of the Civil Service Commission of the City of New Orleans (CSC) denying him back pay and other benefits and conditioning his reinstatement on a medical examination. The CSC found that Officer Allen’s termination was not justified, and the NOPD has withdrawn its appeal of the CSC’s judgment
 
 [1]
 
 . The wrongful termination judgment is now final and binding on all parties in this litigation. For the reasons stated in this opinion, we amend the CSC judgment and affirm, as amended.
 

 By letter dated August 27, 2008, the NOPD, through its superintendent, Warren J. Riley, advised Officer Allen of an administrative investigative report alleging violations of Departmental Rules and/or Procedures, regarding Rule 2: Moral Conduct, Paragraph 1 — Adherence to Law (La.R.S. 33:2426). The investigation, conducted by NOPD Sergeant Daniel Wharton of the Public Integrity Bureau (PIB),
 
 *914
 
 determined that on Sunday, March 30, 2008, during the ^investigation of an incident at Officer Allen’s home, Sergeant Wharton ordered Officer Allen to report to the PIB on Monday, March 31, 2008. The
 
 letter
 
 further advised Officer Allen that he was on leave without pay since January 30, 2008; that his Second Division supervisors, Sergeant Troy Lyles and Lieutenant Michael Field, attempted several times to contact him to advise him to report to duty and to render a statement in the administrative investigation of Case # 2007-1019-R, to no avail. According to the Superintendent’s letter, when Officer Allen reported to the PIB as ordered, Lieutenant Michael Harrison of the PIB advised him of a pending administrative complaint filed against him, and of his obligation to provide a statement regarding the complaint pursuant to La.R.S. 33:2426. Officer Allen allegedly claimed he was feeling stressed out and ill and stated he would not render a statement. Lieutenant Harrison ordered him to render a statement and advised him to remain in the office to accept a doctor’s referral form and sign a Suspension Notification Form; however, Officer Allen left the PIB office, saying he would deal with these issues later. The letter refers to a Hearing held before PIB Deputy Superintendent Kirk M. Bouyelas on Wednesday, August 27, 2008, and the Superintendent concluded that Officer Allen offered nothing at the hearing that would tend to mitigate, justify, or explain his behavior. Deputy Superintendent Bouye-las recommended a sustained Violation of Rule 2, Paragraph 1, and recommended Officer Allen’s dismissal from the NOPD.
 

 According to the Superintendent’s letter, Officer Allen’s conduct was also found to be contrary to the standards prescribed by Rule IX, Section 1, paragraph |sl.l of the Rules of the Civil Service Commission for the City of New Orleans, providing that when a classified employee is unable or unwilling to perform the duties of his position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his duty to perform, or otherwise has become subject to corrective
 
 action,
 
 the appointing authority shall take action warranted by the circumstances to maintain the standard of effective service, including: (1) removal from the service; (2) involuntary retirement; (3) reduction in pay, subject to limitations; (4) demotion, subject to limitations; (5) suspension without pay not exceeding one hundred twenty calendar days; (6) fine. Based on the Deputy Superintendent’s recommendation, Superintendent Riley dismissed Officer Allen from the NOPD, effective August 27, 2008, and imposed a forty-six day suspension for refusing to render an administrative statement after having been ordered to do so.
 

 Officer Allen appealed his dismissal and his suspension, and the CSC conducted a hearing on November 13, 2008, at which Officers Wharton and Harrison testified. The matter was held open for further testimony, by Officers Lyles and Brian Gabriel, Ms. Rhonda Sidney, an NOPD Administrative Analyst assigned to the NOPD’s Administrative Duties Division (ADD), Deputy Superintendent Bouyelas, and Officer Allen, and was completed on January 28, 2009. The CSC concluded that La.R.S. 33:2426 requiring oaths, testimony, and production of records, applies only to courts, judges, legislative committees, or an officer, board or body authorized to conduct a hearing or inquiry. Specifically, the LCSC ruled that the statute does not apply to internal police investigations. The CSC concluded:
 

 The Appointing Authority employed the Appellant in the Second District as the liaison officer for the Magazine Street Promenade. In December of
 
 *915
 
 2007, the Appellant’s supervisors informed him of a reassignment to a regular patrol officer assignment. The Appellant testified that the manner in which his supervisors informed him of the reassignment upset him to such a degree that he developed a medical condition called acute distress disorder. [FN 2: The Appellant was unable to articulate with any clarity what was said to him that would have reasonably caused such a reaction.]
 

 Although the Appellant complied with the Appointing Authority’s internal regulations regarding the provision of NOPD Form 50’s, which are required by a police officer claiming an injury or illness preventing the employee from returning to work, the [NOPD] treated the Appellant’s absence as a disciplinary matter and initiated an internal investigation. [FN3: Apparently, the Appointing Authority did not know or care that the Appellant was assigned to the Administrative Duties Division because of his alleged illness while the investigation was under way.] On March 30, 2008, the Appellant was involved in a domestic disturbance requiring his presence at the Public Integrity Bureau. [FN4: The Appellant was never suspected of any wrongdoing in the domestic disturbance matter, but was required to give a statement.] The Appellant, as instructed, appeared at the Public Integrity Bureau office the following day. While there, the Appellant received an order to give a statement in the PIB investigation. The Appellant refused stating that to do so would be contrary to his doctor’s instructions. [FN 5: If in fact, the Appellant suffered from Acute Distress Disorder originating from an event involving his supervisors, the Appellant’s reaction was understandable.]
 

 The CSC then applied the constitutional and jurisprudential principles applicable to civil service employee discipline found in La. Const. Art. X, § 8(A);
 
 Walters v. Department of Police of City of New Orleans,
 
 454 So.2d 106 (La.1984);
 
 Goins v. Department of Police,
 
 570 So.2d 93 (La.App. 4th Cir.1990); and
 
 Cittadino v. Department of Police,
 
 558 So.2d 1311 (La.App. 4th Cir.1990), and concluded that the NOPD had not shown by a preponderance of the evidence that it | shad good or lawful cause for dismissing Officer Allen. Specifically, the CSC found:
 

 If the Appointing Authority believed that the Appellant was a malingerer, it should have followed its own procedures and communicated to its employee through the Administrative Duties Division. The Appointing Authority could have easily instructed the Appellant to present himself for a medical examination by a doctor of the Appointing Authority’s choosing. Instead, the Appointing Authority in a very heavy handed manner ambushed the Appellant, and used his non-compliance as a justification for taking a short-cut for terminating what it considered a nonperforming police officer that was absent because of a questionable medical condition.
 

 Officer Allen moved for Rehearing, asking the CSC (1) to note in its decision that the NOPD had withdrawn the suspension at issue in CSC No. 7528; (2) that the suspension must be removed from his PIB file; and (3) to provide for reinstatement with back pay and all other emoluments due him. The matter was heard on July 20, 2009. The CSC reaffirmed its decision, and removed all reference to the forty-five days suspension that was the subject of CSC No. 7528 removed from Officer Allen’s file, noting that the NOPD’s representations at the original hearing, that “disciplinary action has been stayed, it’s
 
 *916
 
 moot, it’s not appealable”, constituted an abandonment of the suspension.
 

 The NOPD has not appealed the CSC’s judgment. The only issues before us are:
 

 (1) Whether the CSC erred in ordering Officer Allen’s reinstatement “conditioned upon [his] submitting to an examination by a physician of the Appointing Authority’s choosing, and the physician clearing the Appellant to return to work.” The CSC based this requirement on its opinion that, “Any officer that | (¡becomes that upset because he does not like how his supervisors addressed him may not have the psychological disposition to perform the duties of a police officer;” and
 

 (2) Whether the CSC erred in ordering,
 
 “If
 
 and when the Appellant is reinstated, it is without back pay.”
 

 (3) Whether Officer Allen is entitled to costs as claimed in his answer to the appeal in 2009-CA-1375.
 

 In making our determination, we apply the abuse of discretion standard, and should not modify or reverse the CSC judgment unless it is shown to be arbitrary, capricious, or characterized by an abuse of discretion.
 
 Mendoza v. Department of Police,
 
 08-0062 (La.App. 4 Cir. 8/20/08), 991 So.2d 1155, 1163. A judgment in this context is arbitrary or capricious when no rational basis exists for the action taken.
 
 Id.,
 
 citing
 
 Bannister v. Department of Streets,
 
 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
 

 Officer Allen testified that he is ready to resume his duties as an NOPD officer, and contends that he should be reinstated without the necessity of obtaining an additional medical clearance. The NOPD contends that the CSC had a rational basis for imposing this requirement. In Officer Allen’s last days as a police officer prior to termination, it argues, he was mentally incapable of performing the duties associated with his job. Furthermore, he has not been on active police duty for over a year and a physical evaluation is necessary to insure that he meets all NOPD physical requirements. Furthermore, it would not be reasonable to require the |7N0PD to reissue a police badge and gun to an officer known to have been suffering from job-related psychological problems without first ascertaining whether or not he is mentally capable of handling a policeman’s responsibilities. The NOPD also suggests that a doctor should evaluate whether Officer Allen’s prescribed medication will adversely affect his ability to perform his duties.
 

 The record contains a copy of Dr. A. Stephen Jase’s certification dated December 20, 2007, evidencing a diagnosis of acute distress disorder and generalized anxiety disorder, certifying that Officer Allen was unable to return to duty in any capacity at that time. On December 31, 2007, Dr. Jase certified that Officer Allen suffered from Acute Stress Disorder and General Anxiety Disorder, and demonstrated poor concentration, irritability, and panic attacks. The doctor prescribed Lexapro and Xanax to treat Officer Allen’s illness. Certifications by the same doctor dated February 11, 2008, March 26, 2008, May 14, 2008, June 25, 2008, and July 25, 2008 contain a diagnosis of gross reaction to stress and general anxiety disorder, again indicating that Office Allen was then unable to return in any capacity. On August 18, 2008, Dr. Jase certified that Officer Allen suffered from whiplash and musculoskeletal pain, muscle spasms and generalized anxiety disorder, and certified he could return to full duty in six weeks.
 

 The parties stipulated, in connection with Officer Lyles’ testimony at the continued hearing, that Officer Allen’s police powers were suspended and he was trans
 
 *917
 
 ferred to ADD on January 4, 2008 because of his psychological claim. Ms. Sidney testified that she recalled his having been transferred on February 24, 2008. |8She explained the discrepancy in dates, indicating that while the NOPD may have requested the transfer on January 4th, Officer Allen did not actually come to ADD until February 24th.
 

 Officer Allen, a twelve-year NOPD veteran, testified at the hearing. He served for seven years in the United States Air Force, and received an honorable discharge with the rank of Sergeant. He then joined the NOPD and most recently served in the 2nd District, with responsibility over the Magazine Street commercial corridor. He testified that beginning in January of 2007, he became the object of discriminatory actions from one of his supervisors. As these actions became progressively worse, he spoke with Sergeant Young, who encouraged him to deal with it for the present, because he was high on the Sergeant’s List, and could expect a promotion. The next day, he was called into Captain Bouyelas’ office, with Lieutenant Laporte and Sergeant Young. The captain accused Officer Allen of having threatened him, which Officer Allen denied. The captain did not allow him to speak in his defense, and told him he would be removed from his present assignment. Officer Allen described his condition at that time:
 

 So I’m sitting up here, and I’m still trying to talk because at this point everything within me, my nerves, my stomach — I started feeling pains and stuff, you know, hitting me in my gut and stuff. It was just like a real panic attack taking place at that point. So I went to talk again. He told me to shut up. He told me I should be grateful, ... And then, he tells me if in any event that I take this to anybody outside of the 2nd District that he would make sure that he would do everything — His exact words was he would do everything within his power to assure that I don’t get promoted, all right? I left out, and I went to attempt to do my job.... I went back to the office, and I told my immediate supervisor, I said ... that I was not feeling well in order to take and continue working, or whatever, that day, and I left.... As the weekend went on and I actually reflected, or whatever, | ¡¡because my emotional state wasn’t any better. As the weekend went on and I actually reflected on all the dedication and loyalty that I put towards that administration and to be treated in the manner in which I was treated, you know — At that time I didn’t know that, you know — What they call it is “gross stress reaction,” I think is the medical terminology for it, the panic attacks and everything that I was getting. I started having those things. It started getting worse.
 

 Officer Allen testified that his continuing contacts with the 2nd District personnel caused his nervous condition to worsen. He testified to his calls to Lieutenant La-porte and Lieutenant Fields, and provided documentation of thirty-two calls to the 2nd District station during this period. Officer Allen also testified to having provided copies of his medical certifications and Form 50s to the NOPD, and to his doctor’s advice that he should avoid contact with the 2nd District personnel.
 

 Officer Allen testified that his doctor released him to return to full duty six weeks from August 18, 2008, which is consistent with Dr. Jase’s Form 50 of that date. He also testified that he is still taking medications for stress, which do not prevent him from performing the functions of a police officer.
 

 NOPD argues that the CSC did not abuse its discretion in finding that “Any
 
 *918
 
 officer that becomes that upset because he does not like how his supervisors addressed him may not have the psychological disposition to perform the duties of a police officer,” and applying that rationale to Officer Allen’s experience. However, on a closer examination, it is clear that Officer Allen’s condition was not the result of his having not liked how his superiors addressed him. The record contains Officer Allen’s uncontroverted testimony of a continuing pattern of discrimination and verbal abuse and threats of demotion and prevention of career advancement by some of his superiors in the 2nd District. The CSC found Officer Allen’s termination to have been illegal, and the record contains Dr. Jases’ | ^certification that he is fit to return to full duty as of October 1, 2008. NOPD recognized this fact at the recorded hearing, when counsel noted:
 

 One administrative note: I want the Hearing Officer to take position notice of that Form 50 dated I believe it was august 18, 2008 that he would not have been released from medical attention until six weeks or return to duty. So we’re looking at basically, roughly, October 1st.
 

 In light of the evidence that Officer Allen suffered from a debilitating psychological condition that prevented him from performing his duties as a police officer, it does not appear that the CSC abused its discretion or acted in an arbitrary or capricious manner in conditioning the officer’s return to duty on a medical clearance.
 

 Officer Allen seeks reversal of the CSC’s denial of his claim for back pay and benefits. Ms. Sidney testified that among her duties was the monitoring of everyone who is out sick, injured or I.O.D. within the NOPD. She testified that Officer Allen was transferred to ADD on February 24, 2007. Sergeant Lyles’ memorandum of March 10, 2008 to the Superintendent, sets forth the following timeline:
 

 December 5, 2007: Officer Allen called in sick.
 

 December 30, 2007: Officer Allen’s sick leave was exhausted, and his annual leave would be used should he remain out.
 

 January 3, 2008: Civil Service received a Civil Service Extension Request indicating that Officer Allen was off from work due to illness; the request was signed by Sergeant Lyles, Lieutenant Laporte, and Captain Bouyelas.
 

 | nJanuary 4, 2008: Sergeant Lyles advised Officer Allen that pursuant to an NOPD Form 55, Suspension of Police Powers, completed by Lieutenant Laporte and signed by Captain Bouyelas, his police powers were suspended because of his having reported a stress/psychological ailment. Form 55 advised Officer Allen that his right to carry a firearm was suspended and he was forbidden to operate in an official capacity. The form also advised him that he would be transferred to ADD, effective January 6, 2008, that a psychological clearance to return was required, and that he was ineligible for state supplemental pay benefits. Furthermore, Officer Allen’s sick leave balances were then exhausted.
 

 February 7,
 
 2008:
 
 upon NOPD request, Officer Allen turned in his NOPD property, including a Glock handgun with two clips, an NOPD radio, a charger, and his NOPD badge, to Lieutenant Morris.
 

 NOPD contends that the CSC has discretion to grant or to deny back pay, relying on La.R.S. 33:2424, which provides in relevant part:
 

 Any regular employee in the classified service, subject to the provisions of this Part, or the rules made pursuant thereto, who deems that he has been removed, dismissed, ... or subjected to
 
 *919
 
 any other discipline set out in R.S. 33:2423, without just cause, may, within sixty days of the action demand a hearing to determine the reasonableness of the action,....
 

 In case of disapproval [of the contested disciplinary action] the [CSC] shall reinstate the employee under the conditions which it deems proper, and may order full pay for lost time.
 

 112La.R.S. 33:2423 A(l), applicable to cities with a population in excess of 450,000
 
 [2]
 
 , provides for, among the corrective and disciplinary actions available to the NOPD, removal from the service. La.R.S. 33:2424 mandates reimbursement for any loss of pay occasioned by the disciplinary action only if the commission finds that the disciplinary action was for religious or political reasons.
 

 The Louisiana Supreme Court in 1959 established the principle, statutorily enshrined in 1960 as La.R.S. 49:113
 
 [3]
 
 , that where the mandate of law was not followed, the employee’s services were never legally terminated. Therefore, the court reasoned, such an employee’s status was never terminated, and, consequently, he is entitled to receive back pay.
 
 Hermann v. New Orleans Police Department, on rehearing,
 
 238 La. 81, 97, 113 So.2d 612, 617-18. The CSC may exercise its statutory discretion only where the penalty imposed was excessive or where the cause for dismissal did not justify the penalty.
 
 Id.
 

 While the CSC did not make a specific finding that the NOPD denied Officer Allen his substantive or procedural due process rights, using that terminology, it did find that the NOPD did not “follow its own procedures” and “in a very heavy handed manner ambushed the Appellant, and used his non-compliance as a justification for taking a short-cut for terminating what it considered a non-performing police officer.” Officer Allen also testified that he was threatened with loss of career advancement should he take his claims beyond the 2nd District.
 
 [4]
 
 This sort of “ambush”, intimidation, and failure to follow | lsprocedures is exactly what the
 
 Hermann
 
 court and the legislators who enacted La. R.S. 49:113 contemplated as appropriate conditions for mandating recovery of back pay. See also,
 
 Blappert v. Department of Police,
 
 647 So.2d 1339 (La.App. 4th Cir. 1994) where we required payment of back pay when the NOPD was found to have failed to follow its procedures.
 

 Furthermore, the basis on which Officer Allen was terminated was his alleged violation of La.R.S. 33:2426, a statute that, as a matter of law, is inapplicable to NOPD internal investigations. Thus, the termination at issue was
 
 per se
 
 illegal, and reimbursement of back pay and benefits is mandatory.
 

 In his timely answer to the NOPD’s appeal in No. 2009-CA-1375, Officer Allen seeks costs of the appeal. Officer Allen submitted a verified and uncontroverted
 
 *920
 
 statement of his costs, in the amount of $903.00.
 
 [5]
 
 We therefore assess the costs of the appeal, in the amount of $903.00, to the NOPD.
 

 For the foregoing reasons, the appeal of the New Orleans Police Department in No. 2009-CA-1375 is hereby dismissed. The ruling of the Civil Service Commission is amended to provide reimbursement to Officer James Allen of all back pay and benefits, and is affirmed in all other respects.
 

 AMENDED AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 . Officer Allen answered the NOPD appeal, contending that it should be dismissed as the decisions of the CSC reinstating him in CSC No. 7529 and removing his suspension in CSC No. 7528 were correct, and seeking costs.
 

 [2]
 

 . The parties have not suggested that this statute is no longer applicable to the City of New Orleans and, absent verifiable census data, we assume that the statute remains applicable to the NOPD and its employees.
 

 [3]
 

 . La.R.S. 49:113 provides in relevant part: Employees in the state or city civil service, who have been illegally discharged from their employment, as found by the appellate courts, shall be entitled to be paid by the employing agency all salaries and wages withheld during the period of illegal separation.... [Emphasis added.]
 

 [4]
 

 .This fact moots the NOPD's suggestion that Officer Allen should have lodged his claims of discrimination with the EEOC.
 

 [5]
 

 . The sworn statement includes the following: (1) Preparation of the record and transcript: $721.50; and (2) Filing fees in this Court: $131.50, $25.00, and $25.00.